## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 7100
Washington, DC 20530,

               *Plaintiff*,

    v.

H&R BLOCK, INC.
One H&R Block Way
Kansas City, MO 64105;

2SS HOLDINGS, INC.
5925 Dry Creek Lane NE
Cedar Rapids, IA 52402; and

TA IX L.P.
John Hancock Tower, 56th Floor
200 Clarendon Street
Boston, MA 02116,

               *Defendants*.

## <u>COMPLAINT</u>

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to enjoin the proposed acquisition by Defendant H&R Block, Inc. ("H&R Block") of Defendant 2SS Holdings, Inc. ("TaxACT"), an entity within Defendant TA IX L.P. ("TA").  The United States alleges as follows:

### I.      INTRODUCTION

1.      Last year, approximately 140 million Americans filed their tax returns with the Internal Revenue Service ("IRS").  Increasingly, taxpayers are choosing to prepare their U.S.

federal and state tax returns using digital do-it-yourself tax preparation products ("Digital DIY Tax Preparation Products"), either over the Internet or on their desktop computers. Last year, an estimated 35 to 40 million taxpayers filed their taxes using Digital DIY Tax Preparation Products. In the U.S. Digital DIY Tax Preparation Product market, the three largest firms service approximately 90% of all consumers. H&R Block's proposed acquisition of TaxACT, if allowed to proceed, would combine the second- and third-largest providers in that market and essentially create a duopoly. The proposed acquisition would (1) eliminate aggressive head-to-head competition between H&R Block and TaxACT, and (2) increase the likelihood that the two remaining significant providers would substantially reduce competition through successful coordination; both in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

2. TaxACT has aggressively competed with H&R Block in the Digital DIY Tax Preparation Product market for over a decade. That competition has resulted in product innovations and lower prices that have benefitted the millions of U.S. taxpayers who use Digital DIY Tax Preparation Products. The proposed acquisition would remove this competition, resulting in less innovation and higher prices for consumers. H&R Block's internal documents acknowledge that acquiring TaxACT would result in the "[e]limination of [a] competitor," and would allow H&R Block to "regain control of industry pricing and avoid further price erosion."

3. The reason the acquisition would "avoid further price erosion" is that TaxACT has, in its own words, been a "maverick" in the Digital DIY Tax Preparation Product market. Over the years, TaxACT has touted to the public that it is a "catalyst for change" that has "consistently forced the tax preparation industry to become more competitive, and in doing so [has] forced [its] competitors to change as well." These views of TaxACT as a maverick and significant force of change in the market are also shared amongst TaxACT's competitors.

According to H&R Block internal documents, in 2005 TaxACT "disrupted" the entire marketplace by offering all taxpayers the ability to digitally prepare and electronically file ("e-file") their federal returns for free over the Internet.  This disruption caused the industry leader, Intuit, Inc. ("Intuit," maker of "TurboTax") and then H&R Block to provide their own free tax preparation and e-file offers.  TaxACT has continued its pattern of disrupting H&R Block's and Intuit's businesses by offering products that are functionally comparable to those of H&R Block and Intuit, at comparatively lower prices.  Most recently, TaxACT's products have entered the retail (boxed software) segment of the market.  Through lower prices and unique offerings at Staples, H&R Block's second-largest retailer, TaxACT has, in H&R Block's own words, put H&R Block's sales volumes in those stores "at risk."  With the removal of this maverick from the marketplace, Intuit and H&R Block would be left with a virtual duopoly in which they need not aggressively compete with one another and can more successfully coordinate their pricing and other business actions.

4.     For these reasons, as set forth and detailed below, the proposed acquisition violates Section 7 of the Clayton Act, 15 U.S.C. § 18.  The United States, therefore, seeks injunctive relief preventing the consummation of the proposed acquisition.

## II.     JURISDICTION, VENUE, AND COMMERCE

5.     This action is filed by the United States under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain the Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

6.     This Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25 and 28 U.S.C. § 1345.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as H&R Block and TaxACT are engaged in

interstate commerce and in activities substantially affecting interstate commerce.  H&R Block

and TaxACT sell Digital DIY Tax Preparation Products and related services throughout the

United States.  H&R Block and TaxACT are engaged in a regular, continuous, and substantial

flow of interstate commerce, and their digital DIY tax preparation businesses have had a

substantial effect upon interstate commerce.

7.     This Court has personal jurisdiction over each Defendant.  Defendants H&R

Block and TaxACT both transact business and are found within the District of Columbia.  This

Court has personal jurisdiction over Defendant TA because it transacts business in the District of

Columbia through TaxACT, in which it has a two-thirds ownership interest.

8.     Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28

U.S.C. § 1391(b) and (c).

### III.     THE DEFENDANTS AND THE TRANSACTION

9.     H&R Block is a corporation organized and existing under the laws of Missouri,

with its headquarters located in Kansas City, Missouri.  H&R Block claims that it prepares 1 in

every 7 tax returns filed in the United States and has a brick-and-mortar assisted tax preparation

office within 5 miles of most Americans.  H&R Block's digital DIY products, called "H&R

Block At Home" (formerly called "TaxCut"), were used to file approximately 5.9 million U.S.

individual federal tax returns in 2010.  H&R Block is the second-largest provider of Digital DIY

Tax Preparation Products, behind Intuit.  These digital products are an increasingly important

source of business for H&R Block.

10.     2SS Holdings, Inc. is a corporation organized and existing under the laws of

Delaware and headquartered in Cedar Rapids, Iowa.  2SS Holdings, Inc.'s products are currently

sold as, and referred to by the industry under the brand, "TaxACT."  TaxACT's products were

used to file approximately 5.2 million U.S. individual federal tax returns last year.  TaxACT is the third-largest Digital DIY Tax Preparation Product provider in the United States and the second-largest provider of such products through the online channel.

11.     In 2004, the private equity firm TA made a significant investment in 2SS Holdings, Inc.  As a result, Defendant TA IX L.P., a limited partnership organized and existing under the laws of Delaware and headquartered in Boston, Massachusetts, now holds approximately a two-thirds interest in TaxACT.  TaxACT executives and employees retain the approximate other one-third interest.

12.     On October 13, 2010, H&R Block, 2SS Holdings, Inc., and the TaxACT shareholders entered into an Agreement and Plan of Merger, pursuant to which H&R Block would ultimately acquire TaxACT for approximately $287.5 million in cash.

## IV.     THE RELEVANT MARKET

### A.     Description of the Product

13.     With the rise of the Internet and personal computer usage, in the 1990s, several companies began to offer consumers a unique method of preparing their individual U.S. federal and state tax returns without any professional tax assistance — Digital DIY Tax Preparation Products.

14.     These Digital DIY Tax Preparation Products are offered through three basic channels:  (1) online; (2) software that can be downloaded from an Internet website; and (3) software on a disc that is either sent directly to the consumer or purchased by the consumer from a third-party retailer.  Intuit, H&R Block, and TaxACT are the only major suppliers of Digital DIY Tax Preparation Products, and they are the only digital DIY tax preparation firms that offer their products through all three channels.

15.     The online channel allows digital DIY tax preparation firms to offer their products to taxpayers that wish to complete their returns on the provider's website using a personal computer, an Internet connection, and an Internet browser.  By way of example, a taxpayer can direct his or her Internet browser to H&R Block's website and access an online version of H&R Block At Home.  The taxpayer can then fill out relevant information directly on the company's website.  When using the online channel, all tax calculations are conducted remotely on the servers owned by the company.  After all relevant information is entered and tax calculations are made, a completed tax return is generated and the information is saved on the company's servers.  That return can then either be printed by the individual to mail to the IRS or state revenue agency, or filed electronically (sometimes referred to as "e-filed") with the IRS or state revenue agency over the Internet.  In recent years, e-filing has been an increasingly popular method of filing tax returns.

16.     The second and third channels for using Digital DIY Tax Preparation Products entail a taxpayer installing software on his or her personal computer.  The second channel permits taxpayers to access an Internet website and download the software onto the taxpayer's personal computer.  The third channel permits taxpayers to load and install software, which is stored on a CD-ROM or DVD, onto his or her personal computer.  The CD-ROM or DVD is either sent directly to the consumer, or purchased by the consumer from a retail store (such as Staples or Best Buy).  When using any software product, the information that is entered by the taxpayer for generating the return is not transmitted over the Internet.  Similarly, the calculations necessary for creating the tax return are conducted on the taxpayer's computer, not a company's servers, and the completed tax return is saved to the taxpayer's computer.  As with the online version, the completed return can either be printed or e-filed.

17.     Regardless of the channel, all Digital DIY Tax Preparation Products function in the same way and consist of the same two basic parts:  the user interface, which prompts users to provide relevant information, and the underlying tax engine, which processes that information.

18.     A user interface is the means by which individuals interact with the tax engine. The standard user interface for the Digital DIY Tax Preparation Products of Intuit, H&R Block, and TaxACT is referred to as an "interview," and it provides consumers with a series of questions relating to their personal and financial information.  The answers the consumer gives during the interview are provided to the tax engine for calculation.

19.     The tax engine is essentially a complicated software program based upon federal and state tax code and regulations.  A taxpayer's relevant personal and financial information is provided to the tax engine by way of the user interface, and the tax engine processes the information.  Based upon the state or federal tax code, the tax engine determines what forms should be provided to the IRS or the state revenue agency and records the appropriate figures on the relevant tax forms.

20.     Digital DIY Tax Preparation Product providers typically offer their products in more than one version and at different prices.  The different versions and the pricing differences are often based on one or more of the following:  (a) the number of tax returns filed; (b) whether the tax return prepared is a federal or state return; (c) the tax forms used and complexity of the tax return (*e.g.*, an individual who files with a federal 1040EZ tax form could pay less than someone who files with a 1040 tax form); (d) the channel through which the individual accesses the product (*i.e.*, online, download, or software on a disc); (e) the amount and type of support the individual desires for the process (*e.g.*, whether the individual can contact the company for

technical support or tax advice, or can demand support from the company in the event of an audit); and (f) whether the federal and/or state tax return will be e-filed.

21.     Digital DIY tax preparation companies also sometimes offer related products and services to individuals.  Some of these products include:  (a) refund anticipation checks, which permit an individual to deduct the price of the Digital DIY Tax Preparation Product from the individual's tax refund; (b) prepaid debit cards, which permit individuals to transfer their tax refunds to a prepaid debit card; (c) the ability to access a copy of the individual's prior year tax returns that were filed using the company's product; and (d) additional support services.

22.     Companies that offer Digital DIY Tax Preparation Products compete based upon price and quality of their products, including the number of forms, schedules, and states that they support.  The "Big Three" digital DIY tax preparation companies — Intuit, H&R Block, and TaxACT — all support the vast majority of forms, schedules, and states, though TaxACT's prices are lower than those of H&R Block and Intuit.

### B.     Relevant Product Market

23.     Digital DIY tax preparation products for the preparation of U.S. federal and state tax returns (referred to throughout this Complaint as "Digital DIY Tax Preparation Products") is a relevant product market and line of commerce under Section 7 of the Clayton Act.  A hypothetical monopolist would impose at least a small but significant and nontransitory increase in the price of all Digital DIY Tax Preparation Products.

24.     There are no reasonable product alternatives to Digital DIY Tax Preparation Products.  Other means that consumers can use to prepare their personal tax returns are not sufficiently substitutable to discipline even a small but significant and nontransitory increase in the price of Digital DIY Tax Preparation Products.

25.     Other methods of preparing individual tax returns are not in the same product market as Digital DIY Tax Preparation Products because those methods of preparation either do not offer comparable functionality, are less convenient, are more cumbersome, or are too expensive.  For instance, the "pen-and-paper" method of tax preparation (*i.e.*, taking a copy of a tax return form and manually writing in the appropriate calculations) is a tedious, complicated, and highly error-prone process that lacks the ease of use and functionality that Digital DIY Tax Preparation Products offer.  Digital DIY Tax Preparation Products guide individuals through an easy-to-use interview process, ask them relevant questions in generally understandable language, do not require the individual to know tax rules and regulations, and do not require the individual to understand what information should be recorded or calculated on particular lines of particular tax forms.  For these and other reasons, an insufficient number of individuals would choose pen-and-paper instead of Digital DIY Tax Preparation Products to make even a small but significant increase in the price of Digital DIY Tax Preparation Products unprofitable.

26.     Another method of tax preparation that is not in the product market is assisted tax preparation (*e.g.*, the use of a certified public accountant or a professional tax service such as an H&R Block brick-and-mortar store).  Assisted tax preparation provides consumers with one-on-one professional tax guidance that is generally unavailable with Digital DIY Tax Preparation Products.  In addition, Digital DIY Tax Preparation Products are more convenient to use than assisted tax preparation because they do not require users to schedule time to deal with third-party professionals.  Assisted tax preparation is substantially more expensive than a Digital DIY Tax Preparation Product that prepares comparably complex tax returns and would remain substantially more expensive than Digital DIY Tax Preparation Products even after a small but significant nontransitory increase in the price of Digital DIY Tax Preparation Products.  An

insufficient number of individuals would substitute to assisted tax preparation products to make even a small but significant increase in the price of Digital DIY Tax Preparation Products unprofitable.

### C.     Relevant Geographic Market

27.     The Digital DIY Tax Preparation Products that H&R Block and TaxACT offer assist individuals with filing their U.S. federal and state income tax returns.  Customers that are required to file tax returns in jurisdictions outside of the United States cannot use the Digital DIY Tax Preparation Products at issue for those purposes.  Similarly, Digital DIY Tax Preparation Products that have been engineered to assist individuals with filing tax returns in jurisdictions outside of the United States cannot be used by customers to prepare U.S. federal and state tax returns.  Both customers and suppliers of Digital DIY Tax Preparation Products predominately are located within the United States.  However, because many Digital DIY Tax Preparation Products are provided over the Internet, there do not appear to be any physical restrictions on the location of suppliers or customers.  Accordingly, a relevant geographic market within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18 is a worldwide market.

### V.     TAXACT'S HISTORY OF "DISRUPTING" THE MARKET THROUGH AGGRESSIVE PRICING, QUALITY, AND INNOVATIONS

28.     TaxACT's conduct over the past several years has significantly "disrupted" the market and forced competitors, including Intuit and H&R Block, to offer free products and increase the quality of their products for American taxpayers.  The first major instance of maverick behavior by TaxACT that prompted a competitive reaction from H&R Block and Intuit occurred in 2004 in relation to the Free File Alliance ("FFA"), a public-private partnership of digital DIY tax preparation companies and the IRS designed to offer qualified individuals the ability to prepare and e-file free federal income tax returns.  As H&R Block itself recognized,

TaxACT was the first company to aggressively pursue lower prices in the Digital DIY Tax Preparation Product market for all taxpayers through the FFA: "The first year [2003] was rather uneventful but in the second year [2004] TaxAct introduced an offer that was free to all individual US taxpayers. . . . At the beginning of [2005] Intuit made their offer available to all US taxpayers and just about all other members followed."

29.     TaxACT's FFA offering threatened the profits of all Digital DIY Tax Preparation Product providers.  Accordingly, though they matched TaxACT's offering, members of the FFA, including H&R Block and Intuit, lobbied the government to limit the number of taxpayers to whom FFA members could offer free federal e-filing.  Ultimately, the IRS, in October 2005, limited the type and the number of customers that could be offered a free product through the FFA.

30.     TaxACT responded to the FFA limitations by pursuing an even more aggressive strategy to lower prices and increase quality for taxpayers.  In or about December 2005, TaxACT began offering all taxpayers the ability to prepare and e-file their federal individual tax returns for free directly from TaxACT's website.  This aggressive pricing decision by TaxACT was a major turning point in the market for Digital DIY Tax Preparation Products.  As TaxACT's press release in December 2005 announced:  "users of its TaxACT Standard 2005 Federal editions can e-file their tax returns without charge through www.TaxACT.com, as well as prepare and print them for free. . . . For eight consecutive tax seasons, TaxACT — the first tax-preparation software company to offer free e-file capabilities — has been a pioneer in free tax preparation. Now TaxACT is making it possible for everyone to prepare, print and e-file their taxes for free." TaxACT's "free-free-free" offering, giving consumers the ability to prepare and then either e-file or print and mail their federal tax returns for free through its website, significantly disrupted the

market.  Indeed, TaxACT investment presentations trumpeted its move to free federal as having

"disrupted the then prevalent 'paid' model under which tax preparation software was sold by its

competitors."  TaxACT subsequently boasted to the public that it was a "*tax industry maverick*

[that] has broken down the barrier for everyone to prepare, print, and now even e-file their

returns, all for free."  (Emphasis added).

  31. Internal H&R Block documents (as well as internal documents from other digital

DIY providers) make clear that TaxACT's move to "free federal" was a major change in the

Digital DIY Tax Preparation Product market that resulted in significant pressure to lower prices.

An H&R Block internal presentation on competition within the Digital DIY Tax Preparation

Product market states that "[t]he growth in Free Federal Offers Online was driven primarily by

the growth of TaxACT's Standard and TaxACT Standard+State both [of which] include Free

federal units."  The presentation goes on to note that "TaxACT's success in gaining market share

propelled Intuit to offer the Free Edition on its Home Page.  At one point, TurboTax Deluxe was

offered free through email and tested on the TurboTax Home Page."  The result of this pressure

by TaxACT was, as H&R Block lamented, a "[c]ontinued erosion of Paid units for middle and

lower SKUs," and likely continued "price compression across *all* tax prep."  (Emphasis in

original).  After Intuit began offering "free federal" for individuals, H&R Block followed suit by

offering its own free product.  Presentations made by the heads of H&R Block's Digital Tax

Solutions division to H&R Block's CEO and CFO note explicitly that the rationale for launching

the H&R Block's free online product was "[t]o match competitor offerings and stem online share

loss to Intuit and TaxAct."

  32. TaxACT is also a maverick in terms of product quality.  Over the years, TaxACT

has continuously expanded the functionality of its free version.  As a result, TaxACT's free

version is, in many respects, the functional equivalent of products for which H&R Block and Intuit charge a significant price.  TaxACT's improvements to its free products have forced H&R Block and Intuit to enhance the functionality of their free products.  Nonetheless, TaxACT's free version continues to offer more functionality by, among other things, providing and supporting *all* e-filable federal forms and schedules.  In contrast, the free products offered by competitors such as H&R Block and Intuit do not support all e-filable federal forms and schedules, and thus require taxpayers who need the missing functionality to upgrade to a paid product or switch to another provider.

33.     The competitive pressure that TaxACT created through its maverick prices and functionality has persisted and continues to the present.  Each year since December 2005, TaxACT has relentlessly offered high quality Digital DIY Tax Preparation Products to taxpayers at low prices.  TaxACT's aggressive pricing continues to put competitive pressure on both Intuit and H&R Block to lower their prices on all Digital DIY Tax Preparation Products.  As late as January 22, 2009, an H&R Block executive remarked: "I was shocked at the TaxAct price. . . . It appears that the online market is moving towards a 'free' space or a de minimis cost."  Consistent with that executive's concern over TaxACT's pricing, a late 2010 H&R Block presentation notes that H&R Block lowered the price of its premium software product offering by almost 30% specifically "[i]n order to better compete with online free."

34.     Another recent example of TaxACT's maverick behavior in the market relates to the features of the product that it introduced into the retail sector.  Around December 2010, TaxACT's desktop software began being offered through a major retailer — Staples.  TaxACT's retail software sells at a lower price than the comparable offerings from H&R Block and Intuit — the only major Digital DIY Tax Preparation Products sold at retail stores prior to TaxACT's

introduction into retail.  In addition, in contrast to Intuit and H&R Block, TaxACT (1) does not

charge an additional amount to its customers to e-file their state returns, and (2) does not attempt

to sell users additional features after purchase.  Internally commenting on these features, one

H&R Block employee stated:  "ouch!  They knew exactly what to exploit."

35.     TaxACT's low price and innovative offering at retail poses a threat to H&R Block

and Intuit.  An internal H&R Block presentation notes:  "Retail volume at Staples at risk due to

introduction of TaxACT [r]etail software on combined display."

36.     It is based on all of the above that TaxACT's President and Founder, Lance Dunn,

has noted publicly that TaxACT is a "catalyst for change" that has "consistently forced the tax

preparation industry to become more competitive, and in doing so [has] forced [its] competitors

to change as well."  By acquiring TaxACT, H&R Block would be able to eliminate the threat

that TaxACT, as a maverick, poses to its business.

## VI.     MARKET CONCENTRATION

37.     The relevant market is highly concentrated and would become significantly more

concentrated as a result of the proposed transaction.

38.     As articulated in the *Horizontal Merger Guidelines* issued by the Department of

Justice and the Federal Trade Commission, the Herfindahl-Hirschman Index ("HHI") is a

measure of market concentration.[1]  Market concentration is often one useful indicator of the level

---

[1] *See* U.S. Dep't of Justice and Federal Trade Commission, Horizontal Merger Guidelines §
5.3 (2010), available at http://www.justice.gov/atr/public/guidelines/hmg-2010.html  The HHI is
calculated by squaring the market share of each firm competing in the market and then summing
the resulting numbers.  For example, for a market consisting of four firms with shares of 30, 30,
20, and 20 percent, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$).  The HHI takes into
account the relative size distribution of the firms in a market.  It approaches zero when a market
is occupied by a large number of firms of relatively equal size and reaches its maximum of
10,000 points when a market is controlled by a single firm.  The HHI increases both as the

of competitive vigor in a market and the likely competitive effects of a merger. The more concentrated a market, and the more a transaction would increase concentration in a market, the more likely it is that a transaction would result in a meaningful reduction in competition harming consumers. Markets in which the HHI is between 1,500 and 2,500 points are considered to be moderately concentrated, and markets in which the HHI is in excess of 2,500 points are considered to be highly concentrated. Transactions that increase the HHI by more than 200 points in highly concentrated markets will be presumed likely to enhance market power.

39.     In 2010, approximately 5.2 million federal individual tax returns that were prepared using H&R Block's Digital DIY Tax Preparation Products were e-filed, accounting for approximately 15.6% of the total Digital DIY Tax Preparation Product market.[2] During the same time period, approximately 4.3 million federal tax returns prepared using TaxACT's Digital DIY Tax Preparation Products were e-filed, accounting for approximately 12.8% of the Digital DIY Tax Preparation Product market. And, in 2010, approximately 21 million federal tax returns prepared using Intuit's TurboTax products were e-filed — accounting for a 62.2% share of the market. Using these figures, the market has a pre-acquisition HHI of approximately 4,276, and H&R Block's acquisition of TaxACT would increase that figure by approximately 399, resulting in a post-acquisition HHI of approximately 4,675. Consistent with the *Horizontal Merger*

---

number of firms in the market decreases and as the disparity in size between those firms increases.

[2] 2010 is the most recent year for which accurate data on market shares and concentration currently is available. E-filing figures are used for purposes of calculating market share and concentration because they are the most accurate figures currently available industry-wide. Because e-filing figures do not include taxpayers who use a Digital DIY Tax Preparation Product but choose to print-and-mail the completed tax return, they provide useful but rough approximations. The total annual filing figures contained in paragraphs 9 and 10 include both e-filing numbers and company estimates on the number of print-and-mail filings.

*Guidelines*, this means that the market for Digital DIY Tax Preparation Products is highly concentrated and would become substantially more concentrated as a result of the acquisition.

## VII.   ANTICOMPETITIVE EFFECTS

### A.   The Proposed Transaction Would Eliminate Head-to-Head Competition Between H&R Block and TaxACT

40.     As noted above, H&R Block's acquisition of TaxACT would combine the second- and third-largest digital DIY tax preparation companies.  The acquisition would allow H&R Block to raise prices and to reduce the quality of its Digital DIY Tax Preparation Products by eliminating the intense head-to-head competition between H&R Block and TaxACT.

41.     Digital DIY tax preparation companies compete with each other on price and quality of their products.  On price, competition between the digital DIY tax preparation companies has resulted in lower prices on these products for taxpayers.  Competition from TaxACT in particular has led to significant decreases in prices through the offering of free products.  As illustrated by the examples described above, H&R Block lowered its prices in response to TaxACT.

42.     Digital DIY tax preparation companies also compete on the quality of their products.  TaxACT has been a particularly aggressive competitor in offering consumers high quality and high functionality Digital DIY Tax Preparation Products for low prices.  TaxACT's products continue to improve in quality and functionality through, for example, a better user interface, a better log-on screen, and the ability to prepare and file all e-filable federal forms and schedules.  H&R Block has been pressured and responded to TaxACT's improvements by improving the quality of its Digital DIY Tax Preparation Products.  TaxACT has also, in turn, responded to competition from H&R Block by improving the quality of its Digital DIY Tax

Preparation Products, such as adding and improving data import capabilities, and offering audit assistance and a maximum refund guarantee.

43.     H&R Block is fully aware of the effect that competition from TaxACT has in the Digital DIY Tax Preparation Product market:  "Having disrupted the digital tax prep market with cheaper, lower-end solutions, TaxACT [is] surpassing [H&R Block's] TaxCut in market share and continu[es] to improve in quality (surpassing TaxCut in some press reviews in 2009)."  It should come as no surprise then that a primary benefit for H&R Block in acquiring TaxACT is: "Elimination of competitor."

44.     Internal H&R Block documents repeatedly recognize the competitive significance of "[e]liminati[ng] this] competitor" and pulling the maverick off of the market.  For example, in an internal H&R Block presentation discussing the potential acquisition of TaxACT, one of the "[s]trategic [o]pportunities" of the acquisition is: "Acquire TaxAct and eliminate the brand to regain control of industry pricing and avoid further price erosion."  Compared to the benefits of this acquisition to H&R Block, the benefit to taxpayers, as set forth in the same document, stands in stark contrast:  "None."

45.     By eliminating this intense head-to-head competition, H&R Block's acquisition of TaxACT would make it less likely that H&R Block would lower its prices or continue to innovate.  Thus, with this reduction in competition, taxpayers would bear the cost in terms of higher prices and lower quality Digital DIY Tax Preparation Products.

### B.     The Proposed Acquisition Would Make Anticompetitive Coordination Substantially More Likely

46.     The Digital DIY Tax Preparation Product market possesses several structural features that increase the likelihood of coordination post-acquisition, including a small number of significant competitors, high barriers to entry and expansion, homogeneity of the relevant

product, relatively inelastic demand for the products, and availability of substantial market and competitor information.

47.     After the acquisition, purchasers would only have two well-established and widely-used digital DIY tax preparation companies from which to choose.  By eliminating TaxACT, a significant, disruptive, and aggressive competitor, the acquisition would likely substantially lessen competition between H&R Block and Intuit by enabling coordination among them.  H&R Block would likely degrade TaxACT's free product, and H&R Block and Intuit would increase the prices for their paid products.

48.     In fact, in an internal H&R Block email discussion leading up to the transaction, an H&R Block executive explained exactly how H&R Block's acquisition of TaxACT (in contrast to TaxACT being acquired by another entity) would lead to anticompetitive coordination between H&R Block and Intuit:  "The other possible strategic consideration is that Intuit and HRB together would have 84% of the digital market and we both obviously have great incentive to keep this channel profitable.  Other potential TA purchasers could decide to cut their prices even further to see if they could make large market share gains & build short-term profitability by 'winning the race to the bottom.'"  Another H&R Block executive responded:  "I think the strategic gains are that we lock up the share that is up for grabs by another potential player.  The defensive play in and of itself has value. . . . One could also argue that there is value in taking control of this 'segment' by not encouraging a a [sic] race to free, which Intuit would have no interest in doing, and therefore has value to HRB by preventing it through the acquisition."  As H&R Block so clearly explains, H&R Block and Intuit each have the incentive to charge more for their Digital DIY Tax Preparation Products.  This acquisition would give H&R Block the ability to make that happen.

49.     H&R Block viewed TaxACT as an aggressive and threatening competitor that forced it to lower prices and raise quality of its Digital DIY Tax Preparation Products on several occasions.  By reducing the number of competitors serving the market and eliminating an aggressive competitor, the acquisition would enable the virtual duopolists — H&R Block and Intuit — to coordinate with one another.

**C.     Lack of Countervailing Factors**

50.     It is unlikely that entry or expansion in the Digital DIY Tax Preparation Product market would occur in a timely manner or on a scale sufficient to undo the competitive harm that the acquisition would produce.  Entry and expansion to a level that would be sufficient to replace the competitive influence now exerted on the market by TaxACT would be difficult, take many years, and require the entrant to incur large sunk costs and significant other expenditures to develop a good Digital DIY Tax Preparation Product, obtain the requisite expertise, and build an effective brand.  Successful entrants have spent years and millions of dollars in sunk costs developing their Digital DIY Tax Preparation Products to include support for all or most e-filable forms as well as additional features, such as data import capability and an intuitive user interface.  These development requirements are made more challenging by a demanding annual development cycle required to incorporate tax law and tax forms changes in time for the short tax preparation and filing season (January through mid-April).  These development efforts can be adversely affected by delays in the adoption of, or last minute changes in, new laws or regulations, delays in the availability of new or revised tax forms, and regulatory agency difficulties in receiving electronic submissions.

51.     In addition to developing good digital DIY tax preparation functionality, companies seeking to enter or expand in this market would be required to develop a well-known

brand and good reputation for products that allow individuals to prepare tax returns easily, accurately, and securely.  Developing and maintaining a good reputation and brand awareness is crucial to the widespread acceptance of consumer products like Digital DIY Tax Preparation Products, as users rely on reputation to ensure their taxes will be prepared easily, accurately, and securely.  Developing a good reputation takes years of consistently good performance, and developing a well-known brand requires years of significant and sophisticated marketing efforts. One competitive advantage held by the Big Three is that their large customer bases can lead to additional growth through word-of-mouth customer referrals.  Indeed, TaxACT itself believes that it benefits significantly from word-of-mouth customer referrals.  However, a digital DIY tax preparation business must first develop a large customer base before its word-of-mouth customer referrals are sufficient to have a significant impact on the overall market.

52.     Although H&R Block asserts that the acquisition would produce efficiencies, it cannot demonstrate acquisition-specific and cognizable efficiencies that would be sufficient to offset the acquisition's anticompetitive effects.

## VIII.   VIOLATION ALLEGED

53.     The United States realleges and incorporates paragraphs 1 through 52 as if set forth fully herein.

54.     H&R Block's acquisition of TaxACT would likely substantially lessen competition in the market for Digital DIY Tax Preparation Products, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.  The transaction would likely have the following effects, among others:

(a)     competition between H&R Block and TaxACT in the provision of Digital DIY Tax Preparation Products would be eliminated;

(b)      elimination of TaxACT as a "maverick" — a substantial, independent, and competitive force — in the Digital DIY Tax Preparation Product market, creating a combined firm with reduced incentives to lower price or increase quality;

(c)      competition generally in the provision of Digital DIY Tax Preparation Products would be eliminated or substantially lessened;

(d)      prices of Digital DIY Tax Preparation Products would likely increase to levels above those that would prevail absent the transaction, forcing millions of taxpayers to pay higher prices to prepare and file their federal and state tax returns each year;

(e)      quality and innovation of and in Digital DIY Tax Preparation Products would likely be less than levels that would prevail absent the transaction; and

(f)      the acquisition would increase the likelihood of, or enable, successful anticompetitive competitor coordination in the market for Digital DIY Tax Preparation Products, and actual or tacit collusion among H&R Block and Intuit.

## REQUEST FOR RELIEF

55.      The United States requests:

(a)      that the proposed acquisition be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b)      that the Defendants be permanently enjoined and restrained from carrying out the Agreement and Plan of Merger dated October 13, 2010, or from entering into or carrying out any agreement, understanding, or plan by which H&R Block would acquire TaxACT, its stock, or any of its assets;

(c)      that the United States be awarded costs of this action; and

(d)     that the United States be awarded such other relief as the Court may deem

just and proper.

Dated this 23rd day of May 2011.


Respectfully submitted,


FOR PLAINTIFF UNITED STATES:


   /s/ Christine A Varney                      /s/ Lawrence E. Buterman   
Christine A. Varney (D.C. Bar #411654)        Lawrence E. Buterman (D.C. Bar #998738)
Assistant Attorney General                       Kent Brown
Antitrust Division                            Brent E. Marshall
                                       Danielle G. Hauck
                                       Anthony D. Scicchitano
   /s/ Joseph F. Wayland               H. Joseph Pinto III
Joseph F. Wayland                         Trial Attorneys
Deputy Assistant Attorney General
Antitrust Division                         U.S. Department of Justice
                                       Antitrust Division
                                       Networks and Technology Section
                                       450 Fifth Street, NW
   /s/ Patricia A. Brink               Suite 7100
Patricia A. Brink                         Washington, DC 20530
Director of Civil Enforcement              Telephone: (202) 307-6200
Antitrust Division                         Facsimile: (202) 616-8544
                                       lawrence.buterman@usdoj.gov


   /s/ James J. Tierney       
James J. Tierney (D.C. Bar #434610)
Chief
Networks and Technology Section


   /s/ Scott S. Scheele       
Scott A. Scheele (D.C. Bar #429061)
Assistant Chief
Networks and Technology Section